593 S.E.2d 576

**Geraldine TOTH, Plaintiff Below, Appellant,**

v.

**BOARD OF PARKS AND RECREATION COMMISSIONERS, AKA BOPARC, and the City of Morgantown, Defendants Below, Appellees.**

No. 31340.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 28, 2003.

Decided Dec. 10, 2003.

Dissenting Opinion of Justice McGraw Dec. 11, 2003.

McGraw, J., dissented and filed opinion.

Robert M. Bastress, Morgantown, West Virginia, Attorney for the Appellant.

Jeffery D. Taylor, Jeffery W. Lilly, Rose Padden & Petty, L.C., Fairmont, West Virginia, Attorneys for the Appellees.

DAVIS, Justice:

In this appeal from an order granting partial summary judgment, Ms. Geraldine Toth asks this Court to recognize a cause of action against a potential employer for failure to hire allegedly based upon the applicant's history of suing a former employer for wrongful discharge. After clarifying that partial summary judgment orders, like summary judgment orders, must contain adequate findings and conclusions to permit meaningful review, we conclude that we need not reach the issue of whether to recognize the cause of action suggested by Ms. Toth. We need not reach the issue because, assuming arguendo we were to recognize such a cause of action, Ms.

Toth did not present sufficient evidence to resist summary judgment in favor of the defendant on this claim.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Ms. Geraldine Toth, plaintiff below and appellant herein (hereinafter "Ms. Toth"), worked for eleven and one-half years as the Director of the Retired Senior Volunteer Program (hereinafter "RSVP") for Senior Monongalians, a senior center in Monongalia County. Ms. Toth's employment as RSVP director came to an end on March 19, 1997, when she was fired from that position. Ms. Toth then filed a wrongful discharge lawsuit against Senior Monongalians claiming that they had breached an implied contract between the parties and that her termination was in retaliation for communicating concerns about the operation of the RSVP with a county commissioner and the state director of the RSVP. On January 22, 1999, a jury found that Ms. Toth had been discharged in retaliation for protected activity.[1] She was awarded $40,000 in lost wages and $10,000 for emotional distress. Ms. Toth had also sought reinstatement of her old job, but such relief was not possible as the federal contract for the administration of the RSVP had been transferred from Senior Monongalians to the City of Morgantown's Board of Parks and Recreation (hereinafter "BOPARC"), the defendant below and appellee herein.

In 1998, during the course of her litigation with Senior Monongalians, Ms. Toth applied for the RSVP director position from which she had been fired, which was then being administered by BOPARC. Ms. Toth, who was fifty-eight years old at the time, was not hired for the position. Instead BOPARC hired Ms. Anne D'Allessandri, a twenty-five year old woman whose credentials included a Certificate in Gerontology that was based upon eighteen hours of college credit. In a subsequent letter, BOPARC defended its decision to hire Ms. D'Allessandri over Ms. Toth based upon Ms. D'Allessandri's gerontology certificate and her computer skills.

---

1. The jury rejected Ms. Toth's contract claim.

In their scoring of Ms. Toth's interview, BOPARC officials gave her a zero for fiscal experience and a two for computer experience. According to Ms. Toth's resume, in 1998 when the hiring decision was made she possessed the computer skills to use Dbase, WordPerfect, Quicken, the internet, and e-mail. She also had twelve years experience owning and managing her family's business, "The Neighborhood Food Market."

After she was rejected for the RSVP director position, Ms. Toth filed the lawsuit underlying this appeal against BOPARC alleging age discrimination and retaliation for her lawsuit against Senior Monongalians. Ms. Toth argued that allowing employers to refuse to hire job applicants because they had brought legal action against a previous employer for wrongful discharge would have a chilling effect on those seeking to enforce their legal rights.

Meanwhile, Ms. D'Allessandri quit after less than a year of employment.[2] According to BOPARC, the vacancy created by Ms. D'Allessandri's departure was filled with two women who had worked closely with her and were, thus, familiar with the RSVP program. Mary DeMoss was promoted to RSVP Director and Karen Owens was named RSVP Coordinator. Ms. Toth then filed a motion to amend her complaint to include a second claim of failure to hire. Her motion was granted. In her amended complaint, Ms. Toth alleged that BOPARC's failure to hire her for the RSVP director position arose from age discrimination and as retaliation against her for exercising her constitutional rights as set forth in Article III, §§ 16 and 17 of the West Virginia Constitution.

BOPARC filed a motion for summary judgment. Without explaining its rationale, the circuit court denied the motion as to Ms. Toth's claim of age discrimination, but granted summary judgment as to Ms. Toth's constitutional claims. A jury trial followed on Ms. Toth's age discrimination claim, which resulted in a verdict in favor of BOPARC. The circuit court's final judgment order was entered on September 24, 2002. Ms. Toth

now appeals the circuit court's award of partial summary judgment.

## II.

## STANDARD OF REVIEW

In this appeal we are asked to review a circuit court's entry of partial summary judgment. It is well established that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). In conducting our *de novo* review, we apply the same standard utilized in the circuit court. Namely,

> " '[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

Syl. pt. 2, *Painter*. Finally, we note that, "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. pt. 3, *Painter*.

## III.

## DISCUSSION

### A. Partial Summary Judgment Order

Before reaching the substantive issues raised in this appeal, we first pause to address the sufficiency of the partial summary judgment order entered in this case. In Syllabus point 3 of *Fayette County National Bank v. Lilly*, 199 W.Va. 349, 484 S.E.2d 232 (1997), we held that "[a]lthough our standard of review for summary judgment remains de novo, a circuit court's order granting summary judgment must set out factual findings sufficient to permit meaning-

---

**2.** According to BOPARC, Ms. D'Alessandri resigned to continue her education by attending medical school.

ful appellate review. Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed." We explained our rationale for this holding thusly,

> an order granting summary judgment cannot merely recite and rest exclusively upon a conclusion that, "[n]o genuine issue of material fact is in dispute and therefore summary judgment is granted." For meaningful appellate review, more must be included in an order granting summary judgment. This Court's function as a reviewing court is to determine whether the stated reasons for the granting of summary judgment by the lower court are supported by the record.... In other words, the circuit court's order must provide clear notice to all parties and the reviewing court as to the rationale applied in granting or denying summary judgment.

*Lilly,* 199 W.Va. at 353–54, 484 S.E.2d at 236–37 (internal citations and footnote omitted).

The *Lilly* decision involved an order granting full summary judgment. Here, we are presented with an order granting only partial summary judgment. Nevertheless, the reasons justifying our holding in *Lilly* counsel the same result with respect to partial summary judgment orders. When this Court is asked to review a partial summary judgment order, either under Rule 54(b) of the West Virginia Rules of Civil Procedure,[3] or on appeal at the conclusion of the entire case below,[4] it is our function "to determine whether the stated reasons for the granting of summary judgment by the lower court are supported by the record." *Lilly* 199 W.Va. at 353, 484 S.E.2d at 236. Thus, to facilitate a meaningful review by this Court, the circuit court must provide its rationale and findings of the material facts upon which it based its decision. An example of our need for such findings in connection with a partial summary judgment order may be found in our opinion in *Adkins v. Meador,* 201 W.Va. 148, 494 S.E.2d 915 (1997). After discussing the

law relevant to the particular issue presented in that case, the Adkins Court explained that

> [t]he circuit court's sole finding [in its partial summary judgment order] was entirely conclusory: "the Court finds that Gary Adkins is an insured within the meaning of the insurance policy issued by Liberty Mutual Insurance Company to Champagne–Webber, Inc., the employer of Gary Adkins." We are unable to assess what facts the circuit court relied upon in reaching this conclusion, and what legal analysis was pursued to grant summary judgment to Mr. Adkins.
>
> In their oral argument before the Court, the attorneys for both sides presented seemingly different interpretations of Mr. Adkins' situation.

201 W.Va. at 157, 494 S.E.2d at 924. Although the *Adkins* case was remanded for further development pursuant to our holding in *Lilly,* we have never expressly held that the *Lilly* ruling applies to partial summary judgment orders. For the reasons set out above, we now follow our rationale in *Adkins* and clarify our ruling in *Lilly* by expressly holding that, while our standard of review for summary judgment remains *de novo,* a circuit court's order granting partial summary judgment must set out factual findings sufficient to permit meaningful appellate review. Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed.

In the case *sub judice,* the circuit courts order provides no findings of fact or rationale for its granting of summary judgment. The order simply stated:

> The "Defendants' Motion For Summary Judgment" with respect to the plaintiff's "public policy" claim based upon the defendants' alleged failure to hire due to consideration of the plaintiff's previous litigation against her previous employer should be granted.

Accordingly, for the specific reasons stated on the record at the conclusion of

---

**3.** *See, e.g., Tolliver v. Kroger Co.,* 201 W.Va. 509, 498 S.E.2d 702 (1997); *Adkins v. Meador,* 201 W.Va. 148, 494 S.E.2d 915 (1997).

**4.** *See, e.g., Smith v. First Community Bancshares, Inc.,* 212 W.Va. 809, 575 S.E.2d 419 (2002); *Stonewall Jackson Mem'l Hosp. Co. v. American United Life Ins. Co.,* 206 W.Va. 458, 525 S.E.2d 649 (1999).

the hearing on this matter, the Court is of the opinion to, and does, hereby ORDER the following:

. . . .

(2) the "Defendants' Motion For Summary Judgment" with respect to the plaintiff's "public policy" claim based upon the defendants' alleged failure to hire the plaintiff due to consideration of the plaintiff's previous litigation against her previous employer shall be, and is, hereby, GRANTED;

No transcript of the hearing on BOPARC's motion for summary judgment was included in the record submitted on appeal. This order does not comport with our holding today. Nevertheless, we are able to resolve the issue raised in this particular instance without a detailed order from the circuit court; therefore, "we decline to remand this case so that the circuit court may provide meaningful findings of fact and conclusions of law." *Lilly*, 199 W.Va. at 354, 484 S.E.2d at 237. *See, e.g., Ward v. Cliver*, 212 W.Va. 653, 656, 575 S.E.2d 263, 266 (2002) ("The order of the circuit court in the instant case does not meet [the *Lilly* ] standard—there is simply a boilerplate reference to the statutory language. However, we conclude that no purpose would be served by a remand under the facts of the instant case.").

### B. Failure to Hire

 Ms. Toth argues that the circuit court erred in granting summary judgment as to her constitutional tort claim alleging that BOPARC failed to hire her because she had engaged in conduct that is protected by Article III, §§ 16[5] and 17[6] of the West Virginia Constitution.[7] Stated in the context of the facts before us, Ms. Toth asks us to recognize a cause of action that would allow her to sue a prospective employer for failing to hire her when the failure to hire was allegedly based upon her activity of suing a former employer for wrongful discharge.

This Court has not recognized a cause of action for *failure to hire* based upon an applicant's history of filing a law suit against a former employer. As Ms. Toth correctly notes, however, this Court has ruled that government employees are protected from being *fired* in retaliation for filing a law suit to collect overtime wages. In Syllabus point 2 of *McClung v. Marion County Comm'n*, we held that

It is in contravention of substantial public policies for an employer to *discharge* an employee in retaliation for the employee's exercising his or her state constitutional rights to petition for redress of grievances (*W. Va. Const.* Art. III, § 16) and to seek access to the courts of this State (*W. Va. Const.* Art. III, § 17) by filing an action, pursuant to *W. Va.Code*, 21–5C–8 [1975], for overtime wages.

178 W.Va. 444, 360 S.E.2d 221 (1987) (emphasis added).[8]

In the context of retaliation taking the form of a failure to hire, the United States Supreme Court has recognized a cause of action for failure to hire that was based on an applicant's exercise of First Amendment rights, but that case involved free speech and associational rights. *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). In *Rutan*, the Governor of Illinois instituted a hiring procedure that based employment decisions on political

---

**5.** Article III, § 16 of the West Virginia Constitution provides: "The right of the people to assemble in a peaceable manner, to consult for the common good, to instruct their representatives, *or to apply for redress of grievances*, shall be held inviolate."

**6.** Article III, § 17 of the West Virginia Constitution provides: "The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law[.]"

**7.** BOPARC asserts that Ms. Toth's claims were improperly brought under the West Virginia Human Rights Act, W. Va.Code § 5–11–1 *et seq.*,

which does not provide for a cause of action based upon a prospective employers failure to hire for reasons of an applicant's history of litigation against a former employer. Ms. Toth replies that her constitutional tort claim that BOPARC's failure to hire her violated the Open Court's and Redress of Grievances Clauses of the West Virginia Constitution was not brought under the West Virginia Human Rights Act and she has never contended that it was so brought.

**8.** In *McClung*, the employee had sued his *employer* for overtime wages and was subsequently fired.

patronage. One of the five plaintiffs in *Rutan* claimed that he "ha[d] been repeatedly denied state employment as a prison guard because he did not have the support of Republican Party officials." *Rutan* at 67, 497 U.S. 62, 110 S.Ct. at 2733, 111 L.Ed.2d 52. The *Rutan* Court concluded that "conditioning hiring decisions on political belief and association plainly constitutes an unconstitutional condition, unless the government has a vital interest in doing so." *Id* at 78, 497 U.S. 62, 110 S.Ct. at 2739, 111 L.Ed.2d 52.

While there is authority for recognizing a cause of action for a failure to hire on constitutional grounds arising from First Amendment associational rights, Ms. Toth has cited no authority extending this cause of action to encompass a failure to hire claim arising from state or federal guarantees of free access to the courts and the right to petition the government for redress of grievances. We have found no such authority in our own independent research. However, we need not decide whether to forge this new ground in order to resolve the present appeal, since even if we did recognize the cause of action proposed by Ms. Toth, her proof would be insufficient to overcome summary judgment. *See, e.g., State v. Simmons,* 172 W.Va. 590, 309 S.E.2d 89 (1983).

▮ Assuming that a claim of failure to hire as proposed by Ms. Toth existed, such a claim would necessarily require a showing "that the exercise of [the applicant's] constitutional right(s) was a substantial or a motivating factor" for the adverse hiring decision. Syl. pt. 3, *McClung v. Marion County Comm'n,* 178 W.Va. 444, 360 S.E.2d 221. In order to show that Ms. Toth's lawsuit against Senior Monongalians was a substantial or motivating factor for BOPARC's decision not to hire her, Ms. Toth would be required to provide some evidence that BOPARC had knowledge of the lawsuit. Here, the only evidence presented by Ms. Toth in her effort to show that BOPARC had knowledge of her lawsuit against Senior Monongalians was the fact that the lawsuit had been the subject of media attention. We have previously explained that "the party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evi-

dence,' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor." *Painter,* 192 W.Va. at 192–93, 451 S.E.2d at 758–59 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202, 214 (1986)). Moreover,

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. pt. 4, *Painter.*

Evidence merely showing that Ms. Toth's lawsuit had received media attention is simply not adequate to satisfy her burden of "offering more than a mere 'scintilla of evidence'" that BOPARC had knowledge of the suit. *Painter,* 192 W.Va. at 192, 451 S.E.2d 755, 758 (citation omitted). Thus, we find that the circuit court did not err in granting partial summary judgement to BOPARC.

### IV.

### CONCLUSION

For the reasons stated in the body of this opinion, the order of the Circuit Court of Monongalia County granting partial summary judgment to BOPARC is affirmed.

Affirmed.

Justice McGRAW dissents and reserves the right to file a dissenting opinion.

McGRAW, Justice, dissenting:

(Filed Dec. 11, 2003)

In this case, Ms. Toth argued that she suffered discrimination because she had prevailed in her prior lawsuit against her former employer. I believe that she raised a genuine issue of fact on this point. As the majority notes, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Casualty & Surety Co. v.*

*Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963).

I feel that Ms. Toth established a prima facie case that she suffered discrimination because she had availed herself of the constitutionally protected right to apply for redress of grievances. Though a jury may have ultimately found against Ms. Toth on this issue, I believe that she should have had the opportunity to present evidence of this claim to a jury of her peers. Therefore, I must respectfully dissent.