**STATE OF WEST VIRGINIA**

**Dwight D. Conn and Donna J. Conn,**
**Plaintiffs Below, Petitioners**

**vs)  No. 18-0551** (Marion County 15-C-305)

**James L. Beckman and Brooke F. Beckman,**
**Defendants Below, Respondents**

**FILED**

**September 9, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners Dwight D. Conn and Donna J. Conn, by counsel James D. Stacy, appeal the April 19, 2018, order of the Circuit Court of Marion County that granted Respondents James L. Beckman and Brooke F. Beckman's motion for summary judgment and denied petitioners' motion for partial summary judgment in this contested right-of-way case. Respondents, by counsel Craig P. Erhard, filed a response in support of the circuit court's order and a supplemental appendix. Petitioners filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Margaret E. Garrett ("Mrs. Garrett") died on February 11, 2013. Under Mrs. Garrett's will, her four adult children inherited her real property as tenants in common. That real property is located in the J.B. Miller Subdivision in Marion County. On February 4, 2014, Mrs. Garrett's children sold the property to petitioners ("the Conns"). The Conns's deed provides that "any and all existing reservations, restrictions, rights-of-way[,] and conditions are contained in the chain of title of the property conveyed thereby."

At the time of the sale, Mrs. Garrett's son, Michael Garrett, and his wife, Sue, lived next door to the Conns. A long asphalt driveway ran between the Garretts's property and the Conns's property. Off the driveway and near the Garretts's house was a gravel parking pad and a twenty-foot long sidewalk that extends from the driveway to the front door of the Garretts's house. During the year or so that the Conns and the Garretts were next-door neighbors, both families used the driveway to access their houses without dispute. Further, the Conns did not complain about the Garretts's use of the parking pad or the sidewalk.

1

On January 20, 2015, Michael and Sue Garrett sold their house to respondents ("the Beckmans"); thus, the Beckmans and the Conns became next-door neighbors. The Beckmans's deed contains a reservation that provides: "[g]rantors further except and reserve from this conveyance a right-of-way for ingress and egress over the existing driveway located upon one or more of the above-described parcels of land." The Beckmans then began using the driveway, parking pad, and sidewalk that had previously been used by Michael and Sue Garrett. The Beckmans highlight that the driveway is the only means by which they and the Conns can access their houses.

When the Beckmans purchased Michael and Sue Garrett's property, the Conns did not know who owned the driveway and believed it was a shared right-of-way. Thereafter, the Conns had professional surveyor Chad Freels survey their property and learned in May of 2015 that the driveway, the parking pad, and part of the sidewalk to the Beckmans's house were situated on the Conns's property. Following the survey, significant problems arose between the parties regarding the Beckmans's use of the driveway, parking pad, and sidewalk. For example, the Beckmans claim that the Conns threatened to jackhammer the sidewalk to the Beckmans's house, spray-painted "CONNS" in large fluorescent orange letters on the parking pad used by the Beckmans, and harassed the Beckmans's visitors. The parties negotiated a settlement; however, the Conns ultimately disavowed it.

The Conns eventually filed the underlying action alleging trespass and seeking declaratory relief regarding the disputed right-of-way. The Conns asserted that Michael and Sue Garrett conveyed no rights of ingress or egress to the Beckmans, i.e., no right to use the driveway. The Conns further alleged that the Beckmans had no right to use the parking pad or sidewalk because both could be accessed only from the driveway.

Discovery commenced. The Beckmans produced an exhibit that contained various deeds and written instruments regarding their property and the Conns's property. The exhibits reveal that, circa 1970, Earnest G. and Genevieve Shafferman (the "Shaffermans"), who were Margaret E. Garrett's parents and Michael Garrett's grandparents, owned several contiguous tracts of land. Part of that land is now owned by the Conns and part is owned by the Beckmans. The right-of-way on the Conns's property originated in a June 26, 1970, deed by which the Shaffermans conveyed a right to use the "existing driveway" to James H. and Margaret E. Garrett.[1] The 1970 deed provides as follows with regard to the right-of-way:

> FIRST PARCEL: Beginning at a stake, a corner to Lots. No. 25 and 26 of the original partition of lands of J. B. Miller, deceased, in the northern line of Roadway "D", said stake being a corner to land owned by James H. Garrett and Margaret E. Garrett, and running thence with said line of said Roadway "D" [the metes and bounds of the First Parcel follow].

> The parties of the first part [the Shaffermans] reserve unto themselves, their heirs and assigns the right and privilege to travel over, across and on an *existing driveway*

---

[1] James and Margaret Garrett later divorced, after which James Garrett deeded his interest in the property to Margaret Garrett.

on the above described parcel of land, together with the right and privilege to extend said driveway to the lands of the parties of the first part for the purpose of ingress, egress and regress to and from said Roadway "D" and the other lands of the parties of the first part.

(Emphasis added.) Roadway "D" intersects with the lower end of the disputed driveway and runs perpendicular to the driveway. Roadway "D" also runs along the southwest edge of both the Conns's and the Beckmans's properties. The Conns highlight that the driveway was not paved in 1970 when the 1970 deed was filed.

As for the Beckmans' property, it traces back to two deeds from the Shaffermans. In the first deed, dated May 5, 1980, the Shaffermans conveyed a portion of their property to their grandson, Michael Garrett, and his wife, Sue. In the second deed, filed in 1989, the Shaffermans deeded an additional 10,819 square feet of land to Michael and Sue Garrett. The 1989 deed provides that the east boundary of the property aligns with an "unnamed right-of-way." The 1989 deed also contains a plat map that depicts the parcel's east boundary as abutting a right-of-way that is in the same location as the disputed driveway now used by the parties.

In a November 23, 1992, right-of-way agreement, the Shaffermans conveyed the right to use the "existing driveway" to Michael and Sue Garrett. The 1992 agreement references the 1970, 1980, and 1989 deeds, and provides:

The [Shaffermans] do hereby grant and convey unto the Grantees, J. Michael Garrett and Elaine Sue Garrett, husband and wife, the right and privilege to travel over, across and on an *existing driveway* on the hereinafter described parcel of land, together with the right and privilege to extend said existing driveway to the lands of the Grantees for the purpose of ingress, egress and regress to and from Roadway "D". . . .

(Emphasis added.) A survey conducted in preparation for the 1992 right-of-way agreement shows the location of the "R/W EXISTING DRIVE TO ROADWAY D" which mirrors the location of the right-of-way claimed by the Beckmans.

Following discovery, the Beckmans moved for summary judgment claiming that their motion raised purely legal questions and that they had an express right-of-way to the driveway, the parking pad, and the sidewalk, as proved by the deeds, plats, and agreements in the record. The Conns moved for partial summary judgment with regard to the driveway (but not with regard to the parking pad or sidewalk) claiming that (1) the language of the 1970 deed was insufficient to grant an easement; (2) the 1992 deed was invalid because the Shaffermans could not convey an interest they did not have; and (3) even if an express easement was created in the 1970 deed, the easement was extinguished upon Margaret E. Garrett's death in 2013, under the merger doctrine.[2]

---

[2] With regard to the Conns's motion for partial summary judgment, the circuit court noted in footnote 1 of the order on appeal that,

Attached to the Beckmans's motion for summary judgment was the affidavit of Michael Garrett that provides: "[M]ore than 20 years ago, I helped my grandfather and father in . . . paving the driveway/easement which is now used by the [parties]." I "lived in the home now owned by the Beckman[]s and used the driveway/right-of-way for ingress and egress for that home." "I also used the concrete sidewalk attached to the Beckman home to get from the . . . gravel parking area to the front door of the home." "It was never my intention in my conveyance to the Conn[]s to exclude the Beckman[]s from using the . . . driveway/right-of-way, gravel parking area, and sidewalk." "[W]hen I discussed the driveway/right-of-way with the Conn[]s (prior to selling . . . to the Beckman[]s) they asked me to require the Beckman[]s to split the cost of the maintenance of [the driveway/right-of-way.]" "After I sold the Conns'[s] home to them, I continued to reside in the home now belonging to the Beckman[]s, and continued to use the driveway/easement, gravel parking area, and sidewalk . . . just as I always had before . . . ." "At the time I sold to the Conn[]s the driveway/easement was open and obvious to anyone accessing the Beckman or Conn parcels." "Before I sold to the Conn[]s, I explained to them that the driveway/easement was for the benefit of the parcel now owned by the Beckman[]s." "At the time I sold to the Conn[]s, the gravel parking area was open and obvious to anyone . . . . In fact, it was well graveled, and traced out on all three sides with large stones." "I explained to [the Conns] that the gravel parking area was for the benefit of the parcel now owned by the Beckman[]s." "[T]he concrete sidewalk [that led from the driveway to the Beckmans's] home . . . was open and obvious." "That sidewalk has served the home . . . for more than ten years." "When I conveyed the parcels to the [parties], it was my intention that the right to use the driveway/right-of-way easement, the gravel parking area, and the sidewalk would continue as rights and benefits of the Beckman[]s, and the Conn[]s knew that." "[T]he driveway/right-of-way easement is necessary to the use and enjoyment of the [Beckmans's] parcel, and for ingress and egress to that home. In fact, [the driveway] was constructed to serve both parcels."

Attached to the Conns's motion for partial summary judgment was the affidavit of professional surveyor Chad Freels who prepared a plat of survey for the Conns in May of 2015. Mr. Freels found that the easement referenced in the 1992 right-of-way agreement matched the location of the sole existing driveway on the parties' properties and led to Roadway "D". Further, in written findings attached to the plat of survey, Mr. Freels repeatedly stated that his survey was not designed to determine whether the Beckmans had a right to the driveway at issue in this case and that he made no such determination.

Following a hearing, the circuit court granted the Beckmans's motion for summary judgment and denied the Conns's motion for partial summary judgment by order entered May 15, 2018. The circuit court first found that the Beckmans had an express easement to the driveway because "all of the deeds in [the Conns's] chain of title, including [their] own deed, contained language which relegates the conveyance subject to the easement. Thus, [the Conns] took their

[i]t does not appear that [the Conns] moved for summary judgment on the other disputed property rights such as the gravel parking area, and the [Beckmans's] use of the sidewalk attached to their home; however, reading [the Conns's] motion liberally would include in the argument that *no* easement exists for the benefit of [the Beckmans]. Accordingly, the Court has considered [the Conns's] arguments comprehensively.

4

parcel with actual notice of the easement referred to therein." Second, the Conns did not dispute that they had notice that the easement encumbered their property when they purchased it. Thus, they had no protection as bona fide purchasers. Third, the doctrine of merger does not extinguish the Beckmans's easement because there was no complete unity of prior ownership in the Conns's parcel and the Beckmans's parcel.[3]

The Conns now appeal. "A circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Our review is guided by the principle that

> "'[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

*Painter*, 192 W. Va. at 190, 451 S.E.2d at 756, Syl. Pt. 2. Furthermore,

> "[s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syllabus point 4, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

Syl. Pt. 5, *Toth v. Bd. of Parks & Recreation Comm'rs*, 215 W. Va. 51, 593 S.E.2d 576 (2003).

The Conns raise three assignments of error on appeal. They first argue that the circuit court erred in concluding as a matter of law that the 1970 deed in the Conns's chain of title contained a sufficient description of an easement to make it enforceable against future titleholders. The Conns highlight that the language in the 1970 deed does not include the driveway's metes or bounds, its point of origin, or its width or length. The Conns also assert that the location of the "existing driveway" in 1970 is unknown, and that the driveway currently located along the border of their property was not paved until 1980. Finally, the Conns claim that it is meaningless that the 1970 deed provides the "existing driveway" intersects with Roadway "D" because Roadway "D" runs the length of both parties' properties.

In support of their claims, the Conns rely on *Highway Properties v. Dollar Savings Bank*, 189 W. Va. 301, 431 S.E.2d 95 (1993), in which the plaintiff sought to enforce an easement over the defendant's property. The deed purportedly creating the easement provided: "It is agreed and understood that there is common parking and rights-of-way or easements in, to and across all

---

[3] In footnote 7 of the order on appeal, the circuit court noted that "[u]pon the pronouncement of the Court's ruling, [the Conns's] counsel informed the Court that said ruling effectively ended [the Conns's] case, and counsel for [the Beckmans] agreed there were no remaining issues for trial."

parcels for ingress and egress from and to all other parcels." *Id.* at 303, 431 S.E.2d at 97. The circuit court concluded that the doctrine of merger extinguished petitioner's easement because both tracts were derived from a common owner. *Id.* at 304, 431 S.E.2d at 98. This Court agreed, but also found the conveyance to be insufficient as a matter of law given its "totally inadequate description" that "contained nothing that would serve to specify in the slightest degree any means of geographically locating the easements on the property." *Id.* at 305-06, 431 S.E.2d at 99-100.

The Conns also rely on *Folio v. Clarksburg*, 221 W. Va. 397, 655 S.E.2d 143 (2007). In *Folio*, the plaintiffs sought specific performance and enforcement of two right-of-ways that were allegedly located on property the plaintiffs sold to the defendant, the City of Clarksburg. *Id.* at 399, 655 S.E.2d 145. "Each right-of-way agreement provided that, 'The right-of-way for pedestrian travel shall connect with Traders Alley and shall connect with Pike Street across said property . . . for the purpose of ingress and egress for any and all purposes to the rear of the building of Grantee located at 110–112 South Third Street.'" *Id.* at 400, 655 S.E.2d at 146. The circuit court granted summary judgment to the City of Clarksburg, in part, because the agreements that created the right-of-ways were ambiguous as to the width and location of the rights-of-way, and therefore, were invalid. *Id.* at 401, 655 S.E.2d at 147. On appeal, we affirmed.

Finally, the Conns rely on *Hoard v. Railroad Co.*, 59 W. Va. 91, 53 S.E. 278 (1906). In *Hoard*, the plaintiffs contracted to sell land to be used by the defendant railway as a right-of-way. *Id.* at 92, 53 S.E. at 278. The parties' contract provided that the plaintiffs' and the railway's engineers would prepare a description of the right-of-way for inclusion in the deed. *Id.* The railroad provided a map and a description of the right-of-way, but the plaintiffs did not agree to it. The plaintiffs then brought a specific performance action against the railroad and, thereafter, tendered a "form or blank deed" to the railway that the railway did not accept. *Id.* at 93, 53 S.E. at 278. The chancery court enforced the contract of sale and the railway appealed claiming that the deed proffered by the plaintiffs and entered by the circuit court failed to contain a description of right-of-way conveyed to the railway. *Id.* This Court questioned whether the "form or blank deed" contained the definite description to which the railway was entitled. We found that "the grantee has a right to a description fuller, more precise and definite, than is required in a preliminary contract" and ruled in favor of the railway. *Id.* at 93, 53 S.E. at 279. Ultimately, we held in Syllabus Point 1 of *Hoard* that

> [a] deed granting . . . land for [a] right-of-way must contain on its face a description of the land in itself certain, so as to be identified, or, if not in itself so certain, it must give such description as, with the aid of evidence outside the deed, not contradicting it, [as] will identify and locate the land, otherwise the deed is void for uncertainty.

59 W. Va. at 91, 53 S.E. at 278.

The 1970 deed at issue in this appeal expressly and unambiguously grants the dominant tenement, now owned by the Beckmans, the right to use the "existing driveway" and contains the metes and bounds of Parcel One on which the "existing driveway" is found. The 1970 deed also describes the "existing roadway" as being "for the purpose of ingress, egress and regress to and from Roadway "D"." Roadway "D" runs perpendicular to, and intersects with, the existing

6

driveway. Clearly, this conveyance is unlike the "totally inadequate description" for the right-of-way at issue in *Highway Properties* that "contained nothing that would serve to specify in the slightest degree any means of geographically locating the easements on the property." 189 W. Va. at 306, 431 S.E.2d at 100. As to the Conns's argument that the 1970 deed does not contain the exact metes and bounds of the "existing driveway," "[West Virginia] Code § 36-3-5a(a) (2004) provides that a right-of-way cannot be declared invalid because of the failure of the granting instrument to include a metes and bound description, a centerline specification, or a drawing or plat reference." *Folio*, 221 W. Va. at 401, 655 S.E.2d at 147. Nor is the conveyance at issue in this case like the rights-of-way at issue in *Folio* because the location of those rights-of-way could not be discerned by reference to the deeds or with the aid of the evidence outside the deed. Accordingly, we find that the circuit court did not err in concluding that the 1970 deed contained a sufficient description of a right-of-way to make it enforceable against future titleholders.

In the Conns's second assignment of error, they object to the circuit court's "numerous references" in the order on appeal that they had notice of the Beckmans's right-of-way. The Conns claim that notice of an easement may be relevant to the creation of a prescriptive easement but not to the alleged express easement at issue in this case.

We find only two references regarding the Conns's notice of easement in the circuit court's lengthy and well-reasoned order. The first reference is found in paragraph "11" and provides: "It is undisputed that the driveway in question is open and obvious and, at present is the exclusive means of home access for both parties." The second reference, found in paragraph "22," provides:

> Additionally, there was, and is, sufficient notice to [the Conns] that there was some easement by which [the Beckmans's] servient parcel was, and is, encumbered at the time of [the Conns's] purchase of the servient property, and [the Conns] do not dispute this. In fact, they admit it in their pleadings and Discovery Responses. Therefore, [the Conns's] actual knowledge of the easement, and their admission that at the time of the purchase – and for some time thereafter – they believed the property to be burdened by this easement, provides them no protection as bona fide purchasers . . . .

Paragraph "11" is merely a statement of facts to which the Conns did not disagree. In Paragraph "22," the circuit court addressed the Beckmans's argument in their motion for summary judgment that the Conns lacked bona fide purchaser status due to the open and obvious nature of the "existing driveway." The record supports both Paragraphs 11 and 22, which are relevant to the issues raised below. Hence, we find the circuit court did not err in referencing the fact that the Conns had notice of the Beckmans's right-of-way.

The Conns's third and final assignment of error is that the circuit court erred in finding that the doctrine of merger did not apply in this case to extinguish any easement the Beckmans may have had across the Conns's land. The Conns assert that the circuit court based that decision on the dicta found in *Highway Properties*, which provides, in part:

> There are limitations to the concept of merger, as summarized in 28 C.J.S. Easements § 57(b) (1941):

> "In order to extinguish an easement by merger, there must be unity of title and, according to some decisions, of possession and enjoyment of the dominant and servient estates, coextensive in validity, quality, and all other circumstances of right. Ways of necessity and natural easements are, strictly speaking, not subject to the doctrine of merger."

189 W. Va. at 304 n.4, 431 S.E.2d at 98 n.4.

The Conns argue that Michael Garrett originally owned the alleged dominant estate, the Beckmans's property, outright and had an undivided one-fourth interest in the alleged subservient estate, the Conns's property. The Conns claim this was sufficient unity of title for the circuit court to apply the doctrine of merger and to extinguish any easement the Beckmans may have had across the Conns's land.

The Conns's reliance on the doctrine of merger is misplaced because there was no complete unity of title in the parties' titles. Margaret E. Garrett's four children, including Michael Garrett, inherited Mrs. Garrett's property as tenants in common and, as such, sold their property to the Conns. Clearly, Michael Garrett did not own his mother's property in fee simple absolute. Further, Michael and Sue Garrett jointly owned their property in fee simple before they sold it to the Beckmans. Thus, Sue Garrett continued to hold an equal share of the dominant tenement throughout the brief period during which her husband, Michael Garrett, was one of four cotenants of his mother's estate. Accordingly, we find that the circuit court did not err in rejecting the Conns's merger argument due to the lack of unity of title in the two properties.

For the foregoing reasons, we affirm the May 15, 2018, order granting the Beckmans's motion for summary judgment and denying the Conns's motion for partial summary judgment.

Affirmed.

**ISSUED:** September 9, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison